IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMPSON SAFETY LLC | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:24-cv-2483 |
| JACE JONES and JUSTIN JACKSON, | § § § § | |
| Defendants. | § § | |

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

T**ABLE OF** C**ONTENTS**

I. FACTUAL BACKGROUND ..................................................................................................1

II. ARGUMENTS AND AUTHORITIES ....................................................................................1

   A. Legal Standards for TROs. ................................................................................................1

   B. Thompson Will Succeed on the Merits of its Defend Trade Secrets Act and Texas Uniform Trade Secrets Act Claims. .................................................................................2

   C. Thompson Will Succeed on the Merits of its Breach of Contract Claims against Defendants. ......................................................................................................................5

      1. Defendants are bound by enforceable agreements, which include reasonable restrictive covenants. ................................................................................................5

          a) The restrictive covenants are in the Employment Agreements. ...........................7

          b) The Employment Agreements contain reasonable restrictions. ............................8

          c) The Employment Agreements are narrowly tailored to protect Thompson's confidential information and business goodwill. .................................................10

      2. Defendants breached their valid restrictive covenants. ............................................10

   D. Thompson has suffered and will continue to suffer irreparable harm if Defendants' wrongful and unlawful conduct is not enjoined. ............................................................12

   E. The balance of equities favors Thompson. ....................................................................13

   F. The public interest supports injunctive relief. ................................................................14

   G. Notice. .............................................................................................................................14

III. PRAYER FOR RELIEF .......................................................................................................14

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Thompson Safety LLC ("**Thompson**" or "**Plaintiff**") hereby moves for a temporary restraining order (i) enjoining Jace Jones' ("**Jones**") and Justin Jackson's ("**Jackson**) (collectively, the "**Defendants**") continued possession and misappropriation of Thompson's trade secret information in violation of the Defend Trade Secrets Act of 2016 ("**DTSA**"), 18 U.S.C. §§ 1836, et seq., and the Texas Uniform Trade Secrets Act ("**TUTSA**"), Tex. Civ. Prac. & Rem. Code. ch. 134A; (ii) enjoining Defendants from continuing to violate their non-compete agreements with Thompson by operating and working for Jones Fire Protection LLC ("**Jones Fire**"); and (iii) enjoining Defendants from continuing to violate their non-solicitation agreements with Thompson by servicing, calling on, soliciting, and taking away Thompson's customers. If not enjoined, this conduct will continue immediately and irreparably harming Thompson.

## I.   FACTUAL BACKGROUND

For purposes of brevity, Thompson incorporates by reference herein the Original Complaint filed on July 1, 2024 and the Declaration of David Roesler, attached hereto as Exhibit 1 ("**Decl**."), which detail Defendants' actions and their unlawful conduct.

## II.   ARGUMENTS AND AUTHORITIES

### A.   Legal Standards for TROs.

Injunctive relief is available if Thompson establishes: **(1)** a substantial likelihood of success on the merits; **(2)** a substantial threat of irreparable injury if the injunction is not issued; **(3)** that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and **(4)** that the grant of an injunction will not disserve the public interest.[1]

---

[1] *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009); *Sebastian v. Tx. Dep't of Corrections*, 541 F. Supp. 970, 974 (S.D. Tex. 1982).

Although Thompson must demonstrate it is likely to prevail on the merits of its claim, the "likelihood of succeeding on the merits need not be one of absolute certainty."[2] When seeking a TRO, Thompson need not prove its case.[3] Thompson instead need only show a reasonable probability of success.[4] The inquiry focuses solely on the substantive merits of the claim, not on any potential procedural obstacles.[5] Here, Thompson has satisfied its burden.

### B.  Thompson Will Succeed on the Merits of its Defend Trade Secrets Act and Texas Uniform Trade Secrets Act Claims.

To establish a prima facie case for a violation of the DTSA and TUTSA, a plaintiff must show that the defendant misappropriated a trade secret causing damages to the plaintiff.[6] Under the DTSA, the plaintiff must also show the trade secret is used in interstate commerce.[7]

Thompson's trade secret information at issue, includes financial statements and analysis, personnel files and evaluations, internal pricing and cost information, customer lists and contacts information, salary and compensation information, and information concerning specific customer needs vital to its success in the fire extinguisher service business.[8] This information falls squarely within the definition of a "trade secret" under the DTSA and the TUTSA.[9]

Moreover, Thompson has taken reasonable measures to keep the information—which is not generally known to other entities and provides Thompson with a competitive advantage—

---

[2] *Id.* at 975.
[3] *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991).
[4] *Incubus Invs., L.L.C. v. City of Garland*, No. Civ.A. 303CV2039-K, 2003 WL 23095680, at *3 (N.D. Tex. Dec. 17, 2003).
[5] *Janvey v. Alguire,* 647 F.3d 585, 599 (5th Cir. 2011).
[6] 18 U.S.C. § 1836(b)(1); TEX. CIV. PRAC. & REM. CODE Ch. 134A.
[7] 18 U.S.C. § 1836(b)(1).
[8] Decl. ¶ 7.
[9] 18 U.S.C. § 1839(3) ("'[A] 'trade secret' means all forms and types of financial [and] business . . . information, including . . . plans, compilations, . . . methods, techniques, processes, [and] procedures . . . if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value . . . from not being generally known to . . . another person who can obtain economic value from the . . . information."); TEX. CIV. PRAC. & REM. CODE. § 134A.002(6) (same).

secret. Specifically, Thompson (a) requires employees to sign confidentiality agreements to protect Thompson's trade secrets and confidential information; (b) requires its employees to use passwords to protect Thompson's internal systems containing trade secrets and confidential information; (c) limits access to trade secrets and confidential information to those employees who need to know the information in order to perform their roles for Thompson; (d) terminates employees' access to Thompson's systems when employees are terminated or resign; (e) trains employees on the importance of protecting Thompson's trade secrets and confidential information; and (f) implements technological and other physical barriers, including, for example, restricting access to its buildings and offices, and other mechanisms that prevent unauthorized access to, and transfers of its trade secrets and confidential information.[10]

Thompson's trade secrets derive independent economic value from not being generally known to other entities. Thompson is a leading full-service safety company with 15 locations across the United States and has spent years and valuable resources to become a nationwide leader in the safety-services market.[11] Thompson's trade secrets are vital to its business and business model.[12] This information is used in interstate commerce by Thompson, as Thompson utilizes its trade secret information in its businesses in over 10 states.[13]

Defendants' use and/or disclosure of Thompson's trade secrets falls squarely within the definition of a "misappropriation" under the DTSA and the TUTSA.[14]

---

[10] Decl. ¶ 9. *See Intel Corp. v. Rais,* No. 1:19-cv-20-rp, 2019 WL 164958, at *4 (W.D. Tex. Jan. 10, 2019) (holding managing electronic access to information and requiring employees to sign a confidentiality agreement were reasonable efforts to keep the trade secret information secret).
[11] Decl. ¶¶ 5, 7.
[12] *See Hughes v. Age Indus., Ltd.*, No. 04-16-00693-CV, 2017 WL 943423, at *11 (Tex. App.—San Antonio Mar. 8, 2017, no pet.) ("Pricing information and customer lists have been shown to be trade secrets.").
[13] Decl. ¶ 5.
[14] *See* 18 U.S.C. § 1839(5) (defining "misappropriation" as including "(A) acquisition of a trade

As Fire Technicians, Defendants serviced Thompson's customers and developed relationships with the property owners/managers at each of those sites.[15] Defendants had knowledge of and full access to Thompson's "route cards," or customer contact information, which included a schedule of when the customer's next monthly or annual inspections were due.[16] While employed at Thompson, Jones misappropriated Thompson's trade secrets by improperly sending Thompson's pricing list to his personal e-mail account,[17] allowing Jones to copy (or undercut) Thompson's pricing and to improperly compete with Thompson through his new entity, Jones Fire. Now, Defendants are improperly using Thompson's pricing list and their knowledge of Thompson's customer list and inspection schedule to actively and systematically usurp Thompson's customers and customer relationships. Upon information and belief, after resigning from Thompson, Defendants are pre-emptively servicing Thompson's customers ahead of Thompson through their knowledge of Thompson's inspection schedule.[18]

Defendants have utilized Thompson's trade secrets to improperly solicit and poach Thompson's customers—as indicated through the loss of at least twenty (20) customers. The damage to Thompson's goodwill and relationships with those customers is being irreparably harmed. Defendants have used, and will inevitably continue to use, Thompson's trade secrets to steal its customers and neutralize its competitive plans. Lost profit damages from these customer

---

secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who – (i) used improper means to acquire knowledge of the trade secret; [or] (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was – (I) derived from or through a person who had used improper means to acquire the trade secret; [or] (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret"); Tex. Civ. Prac. & Rem. Code § 134A.002(3) (same).
[15] Decl. ¶ 15.
[16] Decl. ¶ 16.
[17] Decl. ¶ 23; Ex. B.
[18] Decl. ¶ 32.

relationships continue to accrue. Thompson can, therefore, establish a substantial likelihood of success on the merits on its misappropriation of trade secret claims under the DTSA and TUTSA.

### C. Thompson Will Succeed on the Merits of its Breach of Contract Claims against Defendants.

The Sterling Agreements and Thompson Agreements at issue provide that Texas law governs the agreements.[19] To prevail on a claim for breach of contract under Texas law, a party must show the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant and damages to the plaintiff resulting from that breach.[20]

#### 1. Defendants are bound by enforceable agreements, which include reasonable restrictive covenants.

In exchange for confidential information and other consideration, Jones and Jackson each executed agreements with Sterling First Aid & Safety Supply, Inc./Sterling Fire Protection, LLC ("**Sterling**"), which included a non-compete provision.[21] Jones and Jackson expressly agreed, among other things, that for a period of two (2) years following the termination of their employment, not to directly or indirectly

> engage in Employer's business or in any competitive business within a two hundred (200) mile radius of any person, firm company, or corporation engaged in the business of placing first aid and safety supply [or fire extinguishers].[22]

On or around September 5, 2023, Thompson acquired Sterling. Through this acquisition, certain of Sterling's assets and rights were sold, transferred, and assigned to Thompson, including

---

[19] Jones' agreement with Sterling is referred to herein as the "**Jones Sterling Agreement**" (Ex. E) and Jackson's agreement Sterling is referred to herein as the "**Jackson Sterling Agreement**" (Ex. F) (collectively, referred to as the "**Sterling Agreements**"). Jones' employment agreement with Thompson is referred to herein as the "**Jones Thompson Agreement**" (Ex. C) and Jackson's employment agreement Thompson is referred to herein as the "**Jackson Thompson Agreement**" (Ex. D) (collectively, referred to as the "**Thompson Agreements**"); Exs. E, F § 17; Exs. C, D § 8.
[20] *Scott v. Sebree*, 986 S.W.2d 364, 372 (Tex. App.—Austin 1999, writ denied).
[21] Exs. E, F § 10.
[22] Exs. E, F § 10. The Jones Sterling Agreement specifically includes "fire extinguishers" as a competitive business.

the Sterling Agreements and the restrictive covenants in them.[23] Thereby, Defendants' non-compete obligations, among other things, continued to Thompson. On or around September 6, 2023, in connection with the acquisition, and in exchange for Defendants' continued employment and/or increasing their rate of compensation, commission or bonus, and continued access to confidential information, Defendants entered into employment agreements with Thompson.[24] Defendants expressly agreed, among other things, that for a period of seven hundred and thirty (730) days following the termination of their employment, not to directly or indirectly:

> hire, call on, solicit, or take away, or attempt to call on, solicit or take away any of the employees or officers of the Company or encourage any employees or officers of the Company to terminate their relationship with the Company;

or

> service, call on, solicit, or take away, or attempt to call on, solicit, or take away any of those customer entities and/or persons who did business with the Company and that Employee either (i) received Confidential Information about, or (ii) had contact with within the last twenty-four (24) month period that Employee was employed with Company.[25]

Defendants also expressly acknowledged and agreed "the terms and provisions of [the Thompson Agreements] are reasonable and constitute an otherwise enforceable agreement to which the terms and provisions of this Paragraph 3 are ancillary or a part of as contemplated by TEX. BUS. & COM. CODE ANN. Sections 15.50-15.52" and the covenants "are reasonable and necessary protective covenants for and are ancillary to the protection of Confidential Information..."[26] They likewise agreed to reformation of the restrictive covenants in the Thompson Agreements if a court determines them in unreasonable in scope.[27]

---

[23] Decl. ¶ 11.
[24] Decl. ¶ 13.
[25] Exs. C, D § 3(b) and (c).
[26] Exs. C, D § 3.
[27] Exs. C, D § 6.

**APPLICATION FOR TEMPORARY RESTRAINING ORDER**                                               **PAGE 6**

The Sterling Agreements and Thompson Agreements contain valid and reasonable non-compete and non-solicit provisions.[28] Covenants not to compete are enforceable when they meet the requirements set forth in TEX. BUS. & COM. CODE §§ 15.50-52 (the "*Act*"). Non-solicitation agreements, like non-competition agreements, are governed by Section 15.50 of the Act.[29] Under Texas law, non-compete and non-solicit provisions are enforceable if they are: **(i)** "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made"; **(ii)** reasonable "to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained"; and **(iii)** "do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee."[30] "The hallmark of enforcement is whether or not the covenant is reasonable."[31] The restrictive covenants at issue in this case are reasonable.

### a) The restrictive covenants are in the Employment Agreements.

The Sterling Agreements are enforceable because Defendants received valuable consideration, including receipt of confidential information and continued employment in exchange for entering into the Sterling Agreements. The Thompson Agreements are enforceable because Defendants received valuable consideration, including continued receipt of confidential information, continued employment, and/or increasing the Defendants' rate of compensation, commission or bonus in exchange for entering into the Thompson Agreements.

The Employment Agreements are also enforceable because they contain reciprocal promises concerning the exchange of Sterling's and, thereafter, Thompson's confidential information. According to the Texas Supreme Court, non-compete and non-solicit agreements may

---

[28] The Sterling Agreements and Thompson Agreements are collectively referred to as the "***Employment Agreements***."
[29] *York v. Hair Club For Men, L.L.C.*, No. 01-09-00024-CV, 2009 WL 1840813, at *4 (Tex. App.—Houston [1st Dist.] June 25, 2009, no pet.).
[30] The Act at § 15.50.
[31] *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011).

be enforced when confidential information is promised, a reciprocal promise not to divulge that information is made, and the confidential information is later provided.[32] In the Employment Agreements at issue, Sterling and Thompson exchanged reciprocal promises with Jones and Jackson.[33] After they signed the Employment Agreements, Sterling and Thompson continued to employ them and provide extensive access to their confidential information.[34] The mutual exchange of promises regarding Sterling and Thompson's confidential information—coupled with Jones and Jackson's subsequent receipt of such information—constitutes separate and independent consideration for the Employment Agreements' enforceability.

Finally, the Texas Supreme Court has upheld non-competition agreements when they are designed to protect the company's goodwill, including customer relationships.[35] Indeed, the Court has specifically stated that goodwill was a business interest worthy of protection under the Act.[36] Given Defendants' extensive interaction with Thompson customers,[37] the Employment Agreements are also enforceable because they are designed to prevent employees from usurping customer goodwill, which is exactly what Defendants did (and continue to do so) here.

      **b)    The Employment Agreements contain reasonable restrictions.**

The non-compete and non-solicitation restrictions in the Employment Agreements are reasonable as to length, geographical area, and scope—especially considering Defendants' customer-facing and vital roles with Sterling, and thereafter, Thompson. The Sterling Agreements' two-year restriction on engaging in a competitive business of placing first aid and safety supply or

---

[32] *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 650-55 (Tex. 2006) (holding noncompete agreement enforceable when employer "promised to disclose confidential information and to provide specialized training under the Agreement, and [employee] promised not to disclose confidential information").
[33] Exs. C, D § 1(c); Exs. E, F.
[34] Decl. ¶¶ 13, 16.
[35] *See Marsh*, 354 S.W.3d at 777, 780.
[36] *Id.* at 778.
[37] Decl. ¶ 15.

fire extinguishers is a reasonable length, as Texas courts regularly uphold covenants of this length (and longer).[38] Similarly, the Thompson Agreements' two-year restriction on soliciting Thompson employees or soliciting Thompson customers who did business with Thompson and that Defendants received confidential information about or who they had contact within the preceding two-year period that they were employed with the Company is reasonable as to length and scope.

The geographic scope is reasonable given the size of Houston and its surrounding metropolitan areas and Defendants' influential roles within Sterling and Thompson. "The breadth of enforcement of territorial restraints in covenants not to compete depends upon the nature and extent of the employer's business and the degree of the employee's involvement."[39] Texas courts routinely "uphold a national or global covenant whose scope exceeds an employee's territory when the scope is justified by the business interest underlying the covenant."[40] The non-compete and non-solicit restrictions in the Employment Agreements apply to a limited radius covering only the Houston and surrounding metropolitan areas, where Thompson is headquartered and where Defendants serviced customers.[41] Given Defendants' influence over Thompson's business, their client-facing roles, and the breadth of trade secrets and confidential information they developed and had access to, it is reasonable (and necessary) to enforce the non-compete and non-solicit restrictions in the Employment Agreements.

Even if the Court finds the scope of Defendants' non-compete or non-solicit restrictions are overly broad as written, the Court should reform the Employment Agreements as required by the Act to prohibit Defendants from working in a substantially similar capacity for a competitor—

---

[38] *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Two to five years has repeatedly been held as a reasonable time in a non-competition agreement.")
[39] *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.).
[40] *Accruent, LLC v. Short*, 2018 WL 297614, at *4 (W.D. Tex. Jan. 4, 2018).
[41] Decl. ¶ 12.

*i.e.*, Jones Fire—that are the same or similar to those they provided to Thompson, stop them from continuing to operate Jones Fire and, specifically, targeting Thompson's customers with whom Defendants received confidential information or had contact with as Thompson or Sterling employees.[42]

### c) The Employment Agreements are narrowly tailored to protect Thompson's confidential information and business goodwill.

"Interest[s] worthy of protection" include, *inter alia*, business goodwill, confidential or proprietary information, trade secrets, and customer information.[43] Applying the non-compete and non-solicit covenants in the Employment Agreements to prevent Jones and Jackson from performing any work for Jones Fire that is similar to the work they were performing for Thompson would impose a restraint that is no greater than necessary to protect the legitimate business interests of Thompson, which include, protecting its customer relationships and goodwill, as well as its trade secrets and other confidential information concerning Thompson's business strategies and cost and pricing information.[44]

### 2. Defendants breached their valid restrictive covenants.

Defendants breached numerous provisions of their respective Employment Agreements. They engaged in competitive employment with Jones Fire. Jones started and is directly competing through Jones Fire. Jones solicited at least one employee, Jackson, to leave Thompson to work for Jones Fire. They solicited Thopson's customers to divert business from Thompson to Jones Fire.

---

[42] *See McKissock, LLC v. Martin*, 267 F.Supp.3d 841, 855–56 (W.D. Tex. 2016) (entering a preliminary injunction after reforming noncompete provision), citing TEX. BUS. & COM. CODE § 15.51(c) ("If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to . . . scope of activity to be restrained that are not reasonable . . . *the court shall reform the covenant to the extent necessary to cause the limitations contained [therein] . . . to be reasonable . . . .*") (emphasis added).
[43] *Marsh*, 354 S.W.3d at 777-78 ("The Act recognizes [employer]'s goodwill as an interest worthy of protection" including "[t]he advantage acquired through the employee's long-term relationship and contact with customers. . . ."); *Alex Sheshunoff Mgmt. Servs.*, 209 S.W.3d at 649 ("business goodwill and confidential or proprietary information are examples of such worthy interests") (citations omitted).
[44] Decl. ¶¶ 7-8, 33-34.

Jones misappropriated, and Defendants are now using, Thompson's trade secrets and confidential information, including Thompson's pricing list. They are not merely trying to compete within the contractually restricted geographic area, Defendants are competing by servicing the same customers they previously served as Sterling employees or would have served as Thompson employees.[45] Several of the service tags strongly suggest Jones began diverting Thompson customers to his new business (Jones Fire) *before* he resigned his employment with Thompson. Here is just one example:



Thompson has already lost twenty (20) customers to Jones Fire through Defendants' breach of their Employment Agreements.[46] Defendants have serviced and inspected fire extinguishers—the same services Thompson provides its customers—on Thompson's client's sites, corroborated by photographic evidence.[47] Thompson has yet to uncover the full breadth of how many more

---

[45] Decl. ¶ 22, 25.
[46] Decl. ¶ 24.
[47] Decl. ¶ 25; Exs. A, G.

customers that Defendants have stolen.[48] These breaches have caused and will continue causing Thompson substantial harm as explained in its Complaint. Thompson can, therefore, establish a substantial likelihood of success on the merits on its breach of contract claims against Defendants.

> D. **Thompson has suffered and will continue to suffer irreparable harm if Defendants' wrongful and unlawful conduct is not enjoined**.

Thompson will suffer irreparable harm without injunctive relief. Under Texas law, irreparable harm is presumed in cases where trade secrets have been misappropriated.[49] Additionally, if Defendants are not enjoined from continuing to utilize Thompson's trade secret information, Thompson imminently risks losing customers beyond the customers it has already lost due to Defendants' continued use of Thompson's trade secret information.[50] This risk is sufficient to establish irreparable harm.[51]

Further, courts frequently hold injunctive relief is proper when the trade secrets at issue were misappropriated from a former employer and are being used while the former employee is working for a direct competitor, which is the precise situation here.[52] The harm to Thompson has already been realized. Thompson has lost valued customers and at least one employee (to its knowledge). The trust, relationship and goodwill between Thompson and its customers has been

---

[48] Decl. ¶ 24.
[49] *See, e.g., IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Ft. Worth 2005, no pet.) (noting that "[t]he threatened disclosure of trade secrets constitutes irreparable injury as a matter of law").
[50] Decl. ¶¶ 24, 33-34.
[51] *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 757 (S.D. Tex. 2009) (holding the "use of an employer's confidential information and the possible loss of customers is sufficient to establish irreparable harm"); *see also David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 757 (Tex. App.—Houston [1st Dist.] 1982, no writ).
[52] *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 504 (5th Cir. 1982) (holding that where former employee will be unable to prevent knowledge of plaintiff's trade secrets "from infiltrating his work . . . Texas has recognized the need for injunctive relief"); *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 470 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("[Where] a former employee is working for a direct competitor, no finding of irreparable harm is necessary to support a permanent injunction to protect trade secrets.").

and continues to be irreparably harmed. Thompson has lost the benefit of preserving its trade secret and confidential information, as indicated through Jones' use of Thompson's trade secret information, including the pricing list that Jones emailed himself when he was forming Jones Fire. Further, given Defendants' client-facing role at Thompson, and their extensive interaction with Thompson's customers, Defendants are unfairly capitalizing on Thompson's goodwill for Jones Fire's benefit, thereby irreparably harming Thompson's customer goodwill.

### E. The balance of equities favors Thompson.

As a result of Defendants' multiple breaches of their Employment Agreements and Defendants' use of Thompson's trade secret information, Thompson faces immediate and irreparable harm to its business operations and competitiveness in the market, substantial loss of customer goodwill, and loss of competitive use and value of Thompson's confidential information and trade secrets. Thompson has already lost twenty (20) customers and will likely lose more customers unless Defendants are enjoined. Losing additional customers would irreparably harm Thompson's presence, reputation, market standing and goodwill in the Houston, and surrounding areas.

The benefit of injunctive relief to Thompson far outweighs any harm to Defendants. Where injunctive relief would merely require former employees to obey their existing contractual obligations, the balance of the hardships favors the former employer.[53] Defendants will not suffer undue hardship if they are enjoined from possessing, using, or disclosing Thompson's trade secrets and confidential information that they are not authorized to possess, use, or disclose in the first instance. Nor would they suffer undue hardship by complying with the contract they signed.

---

[53] *See Direct Biologics, LLC v. McQueen*, No. 1:22-CV-381-SH, 2022 WL 1409984, at *13 (W.D. Tex. May 4, 2022) (noting the burden imposed by a TRO on the former employee is no greater than terms of a reasonable contract to which he voluntarily agreed).

Here, where the absence of injunctive relief risks jeopardizing an employer's competitive benefits obtained through enforcement of its restrictive covenants and protection of its trade secrets is contrasted with the slight risk of harm of imposing reasonable restrictions upon a defendant, the balance of equities favors issuing an injunction.[54] Thompson stands to lose more goodwill, reputation and years of efforts and expenses incurred to create its trade secret information due to Defendants' blatant violation of their restrictive covenants, including their non-competition and non-solicitation restrictions. Thus, the balance of equities weighs in favor of Thompson.

### F. The public interest supports injunctive relief.

The requested TRO serves the public interest because injunctive relief would protect Thompson's valuable trade secrets and goodwill. Further, entry of a TRO is justified because it is in the public's interest "to uphold contracts and to enforce a remedy to which the parties have expressly agreed."[55] Lastly, "[t]he public interest is served by protecting trade secrets."[56]

### G. Notice.

As set forth in the attached certificate, counsel for Thompson has contacted all Defendants to inform them that this lawsuit has been filed.

### III. PRAYER FOR RELIEF

Based on the foregoing, Thompson requests the Court enter a temporary restraining order as detailed in its proposed order, filed herewith. If required, Thompson is willing and able to post reasonable bond as ordered by the Court, in support of any injunctive order issued by the Court.

---

[54] *Picker Int'l, Inc. v. Blanton,* 756 F. Supp. 971, 983 (N.D. Tex. 1990); *McKissock,* 267 F. Supp. 3d at 860.
[55] *Direct Biologics*, 2022 WL 1409984, at *13.
[56] *Picker Int'l,* 756 F. Supp. at 983.

**DATE: July 1, 2024**

Respectfully submitted,

**HAYNES BOONE LLP**

By: /s/ *Michael J. Lombardino*

Michael J. Lombardino
Texas State Bar No. 24070159
Michael.Lombardino@haynesboone.com
Christina Gad
Texas State Bar No. 24070148
Christina.Gad@haynesboone.com
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: 713.547.2301
Facsimile: 713.547.2600

**ATTORNEYS FOR
THOMPSON SAFETY LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that on this this 1st day of July 2024, a true and correct copy of the foregoing document was tendered for filing to the Clerk of the U.S. District Court for the Southern District of Texas using the Court's CM/ECF system.

                                          */s/ Michael J. Lombardino*
                                          Michael J. Lombardino

## CERTIFICATE REGARDING NOTICE

      I hereby certify that I provided notice of Thompson's intent to file the foregoing document along with a copy of Thompson's Verified Original Complaint to all parties on this 1st day of July 2024, and will provide a true and correct copy of the foregoing document to all parties on the following business day, to these email addresses and physical addresses by FedEx.

Notice to Jace Jones provided to:
Hopkins Centrich
c/o Joseph Centrich
8701 New Trails, Suite 200
The Woodlands, Texas 77381
Email: jcentrich@hopkinscentrich.com
Cc: scurrie@hopkinscentrich.com

Notice to Justin Jackson provided to:
Justin Jackson
57 Parsons Court
Conroe, Texas 77303
Email: justinjackson1984@gmail.com