United States District Court
Southern District of Texas
**ENTERED**
September 06, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMPSON SAFETY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-2483 |
| | § | |
| JACE JONES, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a motion for a preliminary injunction filed by the plaintiff, Thompson Safety LLC ("Thompson"). The Court held an evidentiary hearing on the motion on August 8, 2024 (Dkt. 29) and has reviewed the parties' written submissions (Dkt. 5; Dkt. 17; Dkt. 20; Dkt. 26; Dkt. 27; Dkt. 28) and the other filings in the case. Thompson's motion (Dkt. 5) is **DENIED**.

## I. BACKGROUND

Thompson is a safety supply company that, among other things, inspects and maintains fire extinguishers for clients in the Houston area. (Dkt. 1 at p. 1). Two of Thompson's former employees, Defendants Jace Jones ("Jones") and Justin Jackson ("Jackson"), worked for Thompson as licensed fire technicians and now work for Jones's fledgling company, Jones Fire Protection LLC ("Jones Fire"). (Dkt. 1 at pp. 1–2). Thompson alleges that Jones and Jackson have "launched into a full-fledged competition against Thompson through Jones Fire . . . in the fire extinguisher service business[,]" and Thompson has sued Jones and Jackson for: (1) breaching certain restrictive covenants in

their employment contracts; (2) misappropriating trade secrets; (3) violating the Computer Fraud and Abuse Act; and (4) tortiously interfering with existing customer relationships. (Dkt. 1 at pp. 13–22).

Thompson grounds its request for a preliminary injunction on its trade-secret and breach-of-contract claims. (Dkt. 5). The Court granted Thompson's request for an *ex parte* temporary restraining order ("TRO") after Jones and Jackson failed to comply with the Court's order for an expedited response. (Dkt. 9; Dkt. 13). However, the TRO has expired, and Jones and Jackson filed a vigorous response in opposition to Thompson's motion for preliminary injunctive relief prior to the scheduled injunction hearing and appeared at that hearing. (Dkt. 17).

## II. THE LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). In the Fifth Circuit, the following well-established framework generally governs the determination of whether to grant a preliminary injunction:

> To be entitled to a preliminary injunction, the movant must satisfy each of the following equitable factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest. Because a preliminary injunction is an extraordinary remedy, it should not be granted unless the movant has clearly carried the burden of persuasion on all four requirements. Failure to sufficiently establish any one of the four factors requires this Court to deny the movant's request for a preliminary injunction.
> *Id*.

The requirements for obtaining a preliminary injunction are stringent in all cases, but "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *see also Justin Industries, Inc. v. Choctaw Securities, L.P.*, 920 F.2d 262, 268 n. 7 (5th Cir. 1990) ("And because Sutherland is seeking a mandatory injunction, it bears the burden of showing a clear entitlement to the relief under the facts and the law."); *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 441 F2d 560, 561 (5th Cir. 1971) ("[W]hen a plaintiff applies for a mandatory preliminary injunction, such relief should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.") (quotation marks omitted); *Roark v. Individuals of Federal Bureau of Prisons, Former and Current*, 558 Fed. App'x 471, 472 (5th Cir. 2014).

In presiding over a preliminary injunction hearing, a district court may "give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be held[.]" *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (quoting 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2949 at 471). In particular, "[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding." *Dixon*,

835 F.2d at 558 (quoting *Asseo v. Pan American Grain Co., Inc.*, 805 F.2d 23, 26 (1st Cir. 1986)).

## III. ANALYSIS

Based on the evidence presented at the hearing, the Court concludes that Thompson has not carried its burden. Thompson has not established a substantial likelihood of success on the merits of its trade secret claims, as the evidence adduced at the preliminary injunction hearing does not show that Jones and Jackson are in possession of items that are substantially likely to be deemed trade secrets at final judgment. Moreover, the restrictive covenants that Thompson seeks to enforce are overbroad and unenforceable under Texas law. The Court will tentatively reform the restrictive covenants in accordance with Texas law, but on this record Thompson has not shown a substantial likelihood that it will succeed on its claims for breach of the reformed covenants.

*—Likelihood of success on trade secret claims*

The Texas Uniform Trade Secrets Act ("TUTSA") defines "trade secret" as:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
>
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6).

The federal Defend Trade Secrets Act ("DTSA") defines "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if-
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]
> 18 U.S.C. § 1839(3).

Thompson contends that Jones and Jackson are in possession of pricing information and customer lists compiled by Thompson. (Dkt. 26 at pp. 1–2). Under both TUTSA and the DTSA, Thompson bears the burden of establishing that the materials that allegedly constitute trade secrets contain information that was not readily ascertainable through proper means. *See Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467–69 (5th Cir. 2003); *BlueLinx Corp. v. Edwards*, No. 3:23-CV-2503, 2024 WL 3174379, at *12–13 (N.D. Tex. June 24, 2024).

On this record, Thompson has not carried its burden. With regard to Thompson's customer list, "names of customers ascertainable through public sources will not be protected as trade secrets." *BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-379, 2017 WL 3868184, at *14 (W.D. Tex. Sept. 5, 2017); *see also Marek Brother Systems, Inc. v. Enriquez*, No. 3:19-CV-1082, 2019 WL 3322162, at *4 (N.D. Tex. July 24, 2019) ("A

customer list of readily ascertainable names and addresses will not be protected as a trade secret.") (brackets omitted); *Guy Carpenter*, 334 F.3d at 468 ("Evidence in the record indicates participants in the reinsurance market freely disclose the identity of their reinsurance broker and the nature of the reinsurance products they regularly consume. . . . Even though Guy Carpenter took steps to protect its customer list and Provenzale signed a contract stating the customer list was confidential, we conclude the customer list was not a trade secret because it was readily ascertainable."). The record reflects, and neither party disputes, that fire extinguishers in Texas are required to display a tag indicating that a company licensed by the State Fire Marshal has inspected that fire extinguisher within the past 12 months. *See* Tex. Admin. Code §§ 34.520, 748.3117. The tag must indicate the date of the inspection and the inspector's name and telephone number. *Id.* A typical tag looks like this:

DO NOT REMOVE BY ORDER OF
TEXAS STATE FIRE MARSHAL

Jones Fire Protection
12333 Sowden Rd.
Ste B #682460
Houston, TX 77080
(832) 451-2478

3139053
Certificate of Registration Number

Jace Jones
Name of Licensee

Signature

FEL-B-2541792
License Number

TYPE of WORK
MAINTENANCE
NEW EXTINGUISHER
SERVICE (List on back)

DATE OF LAST SERVICE

JAN FEB MAR APR MAY JUN JUL AUG SEP OCT NOV DEC
2025 2026 2027 2028

Dkt. 5-8 at p. 3.

In other words, the identities of Thompson's fire-extinguisher customers are not secret; to the contrary, the relationships between Thompson and its customers must be disclosed on tags attached to the fire extinguishers that Thompson installs or services. One need only look at a fire extinguisher to determine which company last performed a service on that fire extinguisher. Thompson has not met its burden of showing that the identities of its customers are not readily ascertainable through proper means.

Similarly, Thompson has not met its burden of showing that its pricing information is not readily ascertainable through proper means. Jones testified that fire-extinguisher customers will freely disclose the prices they pay for installation, inspection, and maintenance services. (Dkt. 24 at p. 80). The willingness of a customer to freely disclose pricing information cuts against the characterization of that information as a trade secret. *See Guy Carpenter*, 334 F.3d at 468 (holding that a customer list was readily ascertainable when evidence indicated that "participants in the reinsurance market freely disclose the identity of their reinsurance broker and the nature of the reinsurance products they regularly consume"). Thompson has not presented any contrary evidence indicating that its fire-extinguisher customers seek to keep secret the prices they pay for installation, inspection, and maintenance services. *Cf. MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-444, 2022 WL 4245537, at *12 (W.D. Tex. Sept. 15, 2022) ("Jowers's own testimony belies the argument that this information was readily ascertainable, as he testified repeatedly about his clients' desires to keep their information secret and that much of the information he was able to gather about the six candidates was because he had long-time relationships with them.").

"Customer relationships do not qualify as trade secrets just because a company invests time and money to cultivate those relationships." *BCOWW Holdings*, 2017 WL 3868184 at *15. And a former employee's "knowledge of whom he worked with while at [his former employer], absent other evidence, is insufficient to support a finding that he misappropriated trade secrets." *CAE Integrated, L.L.C. v. Moov Technologies, Inc.*, 44 F.4th 257, 263 & n.18 (5th Cir. 2022) (citing *BCOWW Holdings* and *Marek Brother Systems*). The Court concludes that Thompson has not met its burden of showing a substantial likelihood of success on its trade-secret claims.

*—Likelihood of success on claims for breach of restrictive covenants*

The Court also concludes that Thompson has not met its burden of showing a substantial likelihood of success on its claims for breach of the restrictive covenants signed by Jones and Jackson. The restrictive covenants that Thompson seeks to enforce are overbroad and unenforceable under Texas law; and, though Texas law requires the Court to tentatively reform the covenants, Thompson has not shown a substantial likelihood that it will succeed on its claims for breach of the reformed covenants.

"Under Texas law, covenants not to compete that extend to clients with whom the employee had no dealings during her employment or amount to industry-wide exclusions are overbroad and unreasonable." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 211–12 (5th Cir. 2018) (brackets and quotation marks omitted). Under Section 15.50 of the Texas Business and Commerce Code, a covenant not to compete must contain time, scope, and geography limitations that are reasonable and that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer. *Id*.

Section 15.51 of the Texas Business and Commerce Code requires courts to reform unreasonable covenants not to compete. *Id.* But a court may not award damages and may only award injunctive relief for breaches that occurred prior to reformation. Tex. Bus. & Com. Code § 15.51(c). "Additionally, because of the analogous nature of noncompetition and non-solicitation covenants, Texas courts apply the Covenant Not to Compete Act to non-solicitation agreements as well." *Merritt Hawkins & Associates, LLC v. Gresham*, 79 F. Supp. 3d 625, 639 (N.D. Tex. 2015); *see also Zywave, Inc. v. Cates*, No. 4:18-CV-751, 2020 WL 1182286, at *3–4 (E.D. Tex. Feb. 21, 2020), *adopted*, 2020 WL 1171451 (E.D. Tex. Mar. 11, 2020) (evaluating a non-solicitation agreement under Section 15.50 of the Texas Business and Commerce Code).

Thompson seeks to enforce three restrictive covenants. The first covenant reads:

> **Section 10. Not to Compete.** The Employee agrees that on termination of employment either voluntarily or involuntarily by the Employer or Employee, the Employee will not directly or indirectly solicit the Employer's customers or accounts or engage in Employer's business or in any competitive business within a two hundred (200) mile radius of any person, firm company, or corporation engaged in the business of placing first aid and safety supply or fire extinguishers for a two (2) year period from the date when employment under the Agreement ceases.

Dkt. 5-6 at p. 3.

The contract containing that covenant defines "Employer's business" as "the business of selling and supplying first aid and safety supplies and fire extinguishers[.]" (Dkt. 5-6 at p. 1).

The second and third covenants read:

> b. *Restriction on Interfering with Employee Relationships.* Employee agrees that during employment with Company, and for a period of seven hundred and thirty (730) days following the termination of Employee's employment with the Company, Employee will not, either directly or indirectly, hire, call on, solicit, or take away, or attempt to call on, solicit or take away any of the employees or officers of the Company or encourage any employees or officers of the Company to terminate their relationship with the Company.
>
> c. *Restriction on Interfering with Customer Relationships.* Employee agrees that during employment with the Company, and for a period of seven hundred and thirty (730) days following the termination of Employee's employment with the Company, Employee will not, directly or indirectly, except in connection with Employee's employment with the Company, service, call on, solicit, or take away, or attempt to call on, solicit, or take away any of those customer entities and/or persons who did business with the Company and that Employee either (i) received Confidential Information about, or (ii) had contact with within the last twenty-four (24) month period that Employee was employed with Company.

Dkt. 5-9 at p. 4.

All three covenants are overbroad and unenforceable as written. The first covenant bars Jones and Jackson from engaging in "the business of selling and supplying first aid and safety supplies and fire extinguishers" or "in any competitive business" within 200 miles of "any person, firm[,] company, or corporation" that is engaged in "the business of placing first aid and safety supply or fire extinguishers[.]" (Dkt. 5-6 at pp. 1, 3). Despite the inclusion of a purported geographical limitation, this expansive language, and particularly the use of the undefined term "competitive business," amounts to an explicit industry-wide exclusion; and it is consequently overbroad and unreasonable under Texas law. *D'Onofrio*, 888 F.3d at 211–12 ("The covenants amount to an industry-wide restriction—preventing former employees from working in any job related to the sales or marketing of not just cruises, but also a host of other travel products—and are not limited as to either geography or clients with whom former employees actually worked during their employment."); *see also Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.) (cited in *D'Onofrio*) (holding that covenant that included geographical restriction but did "not limit the prohibitions just to customers with whom

[the former employee] had dealings while he was employed" was "over broad" and an "unreasonable restraint[ ] of trade").

The second covenant aims to protect Thompson's legitimate interest in maintaining its employees, but it is overbroad because it bars Jones and Jackson from hiring former Thompson employees who leave Thompson of their own volition. *Cf. Zywave*, 2020 WL 1182286 at *1, 4 (concluding that a covenant that was similar to Thompson's non-solicitation provision but lacked a blanket prohibition on hiring former employees was reasonable). The second covenant also contains vague language—such as the use of the undefined term "call on"—that serves no discernible purpose and reaches innocuous communications between Jones and Jackson and current Thompson employees that are not made for the purpose of solicitation. *Cf. Merritt Hawkins*, 79 F. Supp. 3d at 639–40 (distinguishing an unreasonable non-solicitation provision that broadly prohibits any employment-related communications from a reasonable one that "merely prevents solicitation, recruiting, or those communications made for the purpose of inducing other employees to terminate their employment") (quotation marks omitted).

The third covenant aims to serve the legitimate business interest of "preventing departing employees from using the business contacts and rapport established during their employment to take [Thompson's] clients with them when they leave." *D'Onofrio*, 888 F.3d at 211 (quotation marks omitted). However, the third covenant is overbroad because it reaches clients with whom Jones and Jackson had no dealings while they were employed by Thompson. *D'Onofrio*, 888 F.3d at 211–12; *Wright*, 137 S.W.3d at 298; *see also Gallagher Healthcare Insurance Services v. Vogelsang*, 312 S.W.3d 640, 654 (Tex.

App.—Houston [1st Dist.] 2009, pet. denied) (cited in *D'Onofrio*) ("A restrictive covenant is overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment.") (quotation marks omitted).

Texas law "requires courts to reform covenants found to be unreasonable as to time, geographical area, or scope of activity." *D'Onofrio*, 888 F.3d at 212. Accordingly, the Court will cure the deficiencies highlighted above by: (1) reforming covenant two (the non-solicitation covenant) to eliminate the prohibition on hiring former Thompson employees who leave Thompson of their own volition and to limit the covenant's communications ban to solicitation, recruiting, or those communications made for the purpose of inducing other employees to terminate their employment; and (2) reforming covenant three (the non-compete covenant) to bar Jones and Jackson from servicing or soliciting Thompson clients with whom they worked while they were Thompson employees. In light of the changes to covenants two and three, the Court sees no need to reform the overbroad and unenforceable prohibitions contained in covenant one. *See Gallagher*, 312 S.W.3d at 654 ("A number of courts have held that a non-compete covenant that is limited to the employee's clients is a reasonable alternative to a geographical limit.").

Now that it has complied with its duty to tentatively reform the restrictive covenants at issue, the Court reiterates that Thompson has not shown a substantial likelihood that it will succeed on its claims for breach of the reformed covenants. Thompson acknowledged at the preliminary injunction hearing that it was "not prepared at this time to call any clients" with whom Jones and Jackson have spoken. (Dkt. 24 at pp. 65–66). Although Jones admitted that he has talked to customers of a safety company for which he and Jackson

formerly worked that was bought by Thompson, Thompson did not follow up his admission with more questions; and his testimony does not establish that he has talked to anyone in violation of the reformed restrictive covenants.

—*Threat of irreparable injury*

The Court further notes that, even if the restrictive covenants at issue were enforceable as written and breached, Thompson has not established that damages would be an inadequate remedy.

"The extraordinary equitable remedy of an injunction requires that the [movant] demonstrate that, without injunctive relief, he will suffer an irreparable injury for which damages are an inadequate remedy." *Jones v. American Council on Exercise*, 245 F. Supp. 3d 853, 867 (S.D. Tex. 2017) (quotation marks omitted). "[T]he injury at issue must be actual and imminent, not speculative or remote." *Allied Home Mortgage Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011). "Irreparable injury may be shown where a business 'would suffer a substantial loss of business and perhaps even bankruptcy' absent injunctive relief." *Id*. at 228 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975)).

Thompson has not presented evidence showing that waiting for an award of damages, should it prevail on its claims, would result in irreparable injury. It is not at all clear from the record that the actions for which Thompson has sued Jones and Jackson involve a "potential economic loss" that "is so great as to threaten the existence of [Thompson's] business." *Id.* Thompson's business appears to be fairly large; the company's Regional Business Director testified that Thompson operates in at least five states. (Dkt. 24 at pp. 7–8). In the area just north of Houston (where Jones and Jackson

worked) alone, Thompson employs at least a dozen service representatives. (Dkt. 24 at p. 38). Given the apparent size of its business, Thompson has not carried its burden of showing that, without the injunctive relief that it seeks, it will suffer an irreparable injury for which damages are an inadequate remedy.

## IV. CONCLUSION

Thompson's motion for a preliminary injunction (Dkt. 5) is **DENIED**. The restrictive covenants at issue are tentatively reformed as set forth in this opinion.

SIGNED at Houston, Texas, on September 6, 2024.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE